and others. Arguments not to exceed 15 minutes per side. Mr. McGinnis for the appellants. Good morning. May I please record James McGinnis on behalf of the appellants. I would appreciate having three minutes of rebuttal time. I'd like to begin by reciting some bare bone facts that I think are undisputed in this case, which will provide a framework for the legal arguments. The two appellant police officers received a radio run of gunshots fired at a residence nearby. They go to that residence. When they arrive, they see a gentleman on the porch with a handgun. They disarm him, put him in the scout car, and proceed into the residence. When they come into the residence, they see two gunshot victims. One with a gunshot wound to the head, a second to the stomach. At 11.40, they receive the run. At 11.42, they call for EMS for the two victims. They acted with great dispatch. They proceed, Officer Zato proceeds further into the residence. Officer Piotrowski attends to the victim with the stomach wound, and there's a young child kneeling over that person. When Officer Zato proceeds into the residence, there's a female on the stairway who is visibly upset. He engages her, and at some point, the decedent appears from a back room. It is not clear whether he's a victim or a perpetrator. He engages the decedent. He makes a decision for his own safety and the safety of others to handcuff him. Isn't the problem that your clients have with this appeal that there are various conflicting versions of what happened and the point at which officers realized that something might be amiss with Mr. Black and whether they were indeed prompt in getting medical attention on his behalf? That leads us, leads us to an appeal over which we may not have jurisdiction. Yes, that is not the case. If you look at page 26 of Appalee's brief in the section B, the last sentence of the first paragraph and the first sentence of the second paragraph. I got lost in that. Tell me. Page 26. The Appalee's brief? Yes. Okay, page 26. Yes. Okay. And it's the, under section B, it's the last sentence of the first paragraph and the first sentence of the second. Okay, got it. Okay. This is the constitutional violation complained of. So the legal question is whether or not under this factual scenario there was a constitutional violation. I indicated in my brief that the court construed the constitutional violation as a delay in calling for a medical assistant. The Appalee indicates that the constitutional violation is the failure of the police officer who first responded to the scene to direct him away from the gentleman with the stomach wound toward the decedent who had a shoulder wound. And that the failure to direct the first respondent against, away from one gunshot victim to the second represents a failure. The record explores, at least to my knowledge, it may, but that didn't seem to be the point highlighted in the briefs at least. The record doesn't really explore whether the first unit could have responded to the needs of both victims. I mean, the allegation, it seems to me, is really that the first unit was not advised, meaning the first unit didn't have the ability determine whether it could attend to the needs of both. So I don't think that, I don't understand the plaintiffs to argue that it was a failure to stop attending to the person with the abdominal wound and to start attending to Mr. Black, but just not telling them. The discussion is that they had a constitutional obligation under this factual scenario to advise the first unit that there was another victim, you should attend to that victim, and there should have been a triage, and that triage would have resulted in a different set of circumstances. There's actually a dispute on this record about the point at which the officers had reason to know that Mr. Black had been shot. We will accept the plaintiff's version of that, say they knew immediately, but the record discloses that within five minutes of arriving at the scene, they made three calls for EMS units, and so the second call, that unit was diverted en route. We're talking about the facts. Tell me what the legal issue presented for review is. Whether or not there is a constitutional duty of the officers to direct the EMS toward, away from one victim to a second victim, whether or not that constitutional duty is clearly established under law, and whether these circumstances where the officers saw multiple gunshot victims, called multiple EMS units, did not know that the second unit had been diverted, whether or not their conduct was unreasonable. So the issue of whether or not there was a constitutional violation is a legal question. The issue of whether or not it's clearly established that the officers had a duty to direct or to communicate to the first responders in a specific fashion is a legal question, and thirdly, whether or not the officers' conduct was objectively unreasonable under these set of circumstances. We reviewed the law, recited it in our brief, and none of the cases cited had multiple victims, and all of the cases cited were cases where the police shot the victim. In this case, the officers came upon a situation where an unknown third party had shot the victim. So the question is whether the law dictates what the officers' conduct should be under these circumstances. I find no cases which indicated that they must communicate in a specific fashion to the first responders. It kind of depends at the end of the day, wouldn't it, how the fact issue is resolved. I mean, the legal issue, we're dealing with, I mean, as a general matter, the legal duty is established in this case, but arguably, if officers knew immediately that Mr. Black had been shot, then they would have summoned help for him immediately, just as they did for the other victim. Now, I mean, or they would have known that they perhaps needed more than one unit to work with him, and so isn't that what drives how the constitutional right applies here? I mean, there may not be a case with these specific facts, but surely there are many cases that deal with a delay in seeking medical attention. The constitutional violation alleged is not delay. It is that they did not communicate that the victim... Well, how about the first sentence of the paragraph at the top of page 27? Defendants also deliberately delayed medical care. Yes. In the literature, it's clear that you cannot delay medical care, but this is not what they're claiming. They're claiming that... That was from their brief. I'm sorry? That was additional language from the appellee's brief in addition to what you had us look at. Yeah. The literature says in the Scosari case, which everyone relies on, which is a case where they actually stopped the medical providers from attending to the victim. But in this case, they're not saying that these appellants stopped the first provider. They're saying they failed to intervene and redirect them to other persons who had been injured. But we'll accept the facts as articulated by the plaintiff, and we still submit that there's no constitutional violation for not communicating to the responders or the dispatch in a specific fashion. There's no clearly established law which dictates what the officers should do under these circumstances. When the first call for EMS unit was at 1147, the first unit came at 1153. So when the first unit came, when the officers had contact with the first unit, they had placed two additional calls for EMS units. They had no idea that the second unit would not come to the scene, and they didn't know when the third unit was arrived. So at the point that they had contact with the first EMS units, they had made two additional calls. We submit on a objective, reasonable basis that is not unreasonable conduct. But can I, while you're on the facts, ask, I got the impression, and I'm not sure where it came from, that the officers took the position that Black said when asked, I haven't been shot. And the, Black of course, the plaintiffs say he did notify him that he'd been shot. And they actually pulled up his shirt to look and didn't see anything, which seems virtually impossible under the circumstances. We'll accept the plaintiff's version that they did know he had been shot. The record establishes that they made three calls, two specifically for Mr. Black, and that those calls were made before the first EMS unit arrived. So the district court assumed that the argument was that there was delay in summoning medical assistance. But the constitutional violation is that when the first unit arrived, two additional calls had been made, but they somehow impose a duty on the officer to say, don't treat the gentleman with the stomach wound, there's another gentleman with shoulder wound. And there's speculation as to one, whether or not that had been done, the EMS would have triaged the situation and come to a different conclusion. So you have a gentleman with a head wound, a gentleman with a stomach wound, and a gentleman with a shoulder wound. I would think that the triage would say that the third person was the least injured. And so they did not direct, again, the EMS unit away from the gentleman with the stomach injury to the gentleman with the shoulder injury. Wouldn't the stronger argument from your perspective be that given that there was a five-minute delay between calling for the first EMS unit and the second one, that given the very confused scene that your clients encountered and the fact that there were multiple victims, the delay, they did not act unreasonably in delaying until they could investigate further, given that Mr. Black did not possibly appear to be in any apparent distress? I mean, I don't even think the plaintiff's witnesses say that he had blood gushing out of his body or anything like that. I mean, why isn't that a better scenario for your clients? That's an argument that we made. However, there's a slight correction that within that five-minute period of time, there was not one call, there were two calls. And the second EMS unit was diverted away from the scene, which the officers had no way of knowing. Well, the first call came in 11-42. What time did the second call come? It's indeterminate as to when the second call occurred, but we do know that that unit- Well, I thought the EMS record showed 11-47. That's for the third call. That's for the call, the third unit that arrived at the scene. The second unit was diverted away from the scene because a young woman- What time did the EMS record say that call came in? It's not a part of the record. Well, then maybe it didn't happen. Well, we all concede that it happens. The officers testified to it, and they acknowledged that there jumped out of the window and had run down the street. The second EMS unit saw her and treated her and never came to the scene. So that within what we're talking as about the five-minute delay, there was not one call, there were two calls, one of which did not come to the scene. So the legal question is, did the officers have to, one, do more than call for three EMS units, do more than allow the first unit to treat the gentleman with the stomach injury? Was this specifically two calls for the decedent, one of which did not arrive? I would indicate to the court that there's no constitutional duty on the officers where there are multiple victims and multiple calls for EMS to know that the first EMS unit should not treat the stomach wound, that in fact it should do a triage and treat the gentleman with the shoulder injury. And that there's no clearly established law indicating what language should be used to the dispatch when you call for EMS assistance. The appellee says that they did not use specific language in calling for EMS. I can find no case which prescribes a specific language that the officers should use in notifying dispatch that there's a victim with a gunshot wound. Have I not been watching your clock, or has it not been on? I don't know. I may have just not been. I may have been more attentive to your argument and less attentive to the lights than I should have been. They weren't on. Your Honor, the recording device here shows that the red is on. There's nothing on. Actually, the green light never came on. We can't see any light. I didn't see a green light. I apologize. No, we didn't know either. I mean, and I just realized I hadn't been paying any attention. And I realized when you started to conclude that it must be about time for you to sit down and that I hadn't. The green light actually never came on, so I didn't know whether to start talking or not. We're going to make a phone call to address it. Sorry. If you'll keep up with the appellee's argument and just interrupt to let me know or give one of us kind of a sign or... Stand and wave. Yeah, well, I might be looking at her, not you, but just say something if you can't get my attention. Will do. Okay. Good morning, Your Honor. Seema Patel on behalf of Plaintiff Appellees. I'll jump right into where the questioning was leading with this and is what the specific nature of the deliberate indifference to a serious medical need. Defendants are conceding that the officers knew that Ronald Black had been shot when they assessed the scene after they detained him. So then the question becomes, what did their duty extend to? We're not disputing the fact that EMS was called. And I think that the confusion between... There weren't three calls made, there were two calls made, but the first call was for multiple gunshot wounds. So they did multiple units dispatched to the scene. However... Slow down a little and say that again. The first call... The first call was for multiple gunshot wounds. So there were multiple units that were dispatched pursuant to that call. But unspecified whether there were two or three. Correct. It was unspecified as to number, unspecified as to what the wounds were, where the wounds were, who was injured. So the next question becomes, what is the police officer's duty once EMS does arrive at the scene? Well, and once... I guess that that may be the critical point. I mean, what duty do the officers have after they have told EMS that they need multiple... That there are multiple gunshot wounds and then one of the units is diverted and then five minutes later they call again? I mean, I'm not sure under those... I mean, that may be a really critical factor because it's a little... I mean, that's not what the district court focuses on, but that might be a really critical factor in determining whether there was any deliberate indifference. I think the deliberate indifference comes to not only calling for aid, but then also allowing access to... Access of that aid to the people who need it. And the facts of this case show that the defendants weren't allowing... They either didn't believe that Ronald was shot or were ignoring the fact that he was shot for some reason. Now, wait a minute. Wait a minute. So, I mean, the police do not have supervisory authority over the medical care decisions made by EMS. Certainly not, but they do. They are the first responders and they have the duty to tell them who has been shot. Who are the medical responders responding for? And obviously, they do. Well, now, I understand that there's evidence in the record that officers knew pretty immediately that Mr. Black had been shot, but where's the indication that they... From what derives the indication that they... About what they did or didn't advise EMS? Well, first, they didn't advise EMS. There's nothing in the record to show that the first EMS responders knew that there was a second live gunshot wound at the house. Second, the state... What's the evidence? What specifically... Is there testimony from the EMS responders? There's a statement in the second EMS report, which states that when the second unit did respond or the third unit did respond to the scene, the police officers told them, well, we have somebody here. He says he's been shot, but we don't think he has been, but come take a look at him anyway. So, I think that the inference there is they didn't do that with the first EMS unit. But all it is is the EMS report itself. We're correct. The EMS report itself and then the testimony of the police officers, which is muddled in their police... In the reports that they gave right after the incident, they stated that, oh, Ronald told them that he hadn't been shot. Inference being, they wouldn't have told the EMS responders that he had been shot because they were claiming in their reports that he had never told them that he'd been shot. Then they backtracked later in the deposition and said, oh, he wasn't unequivocal one way or the other about whether he had been or had not been shot. He gave non-answers to their questions of whether he'd been shot. I think the responses to that issue from the police officers speaks to the fact that they didn't tell the first EMS responders that Ronald had been shot. They never advised that there was a third gunshot victim in the house that also needed to be triaged or looked at. I agree that it is up to the EMS how they want to triage the situation, how they want to provide the medical care, but without giving that information to the EMS responders, they're keeping an artificial non-medical barrier. When we deal with deliberate indifference, there is a subjective component there that usually has to do with intent of some kind, malicious or reckless or whatever. What was the reason that these, what would conceivably be the reason that the officers would not tell the EMS unit that there was somebody else in the house that had been shot? Why would they not do that? I don't know why they would not do that. I can't speak from the minds of the police. Well, but could it be reasonably that they had already called another unit and thought there was another unit on the way that would take care of Mr. Black? That's not what the witness testimony was saying. The witness testimony kept saying that Ronald kept telling the police officers, I've been shot, I've been shot. And the police officers answered by saying, no, you're not. You're not going to a hospital. You're going to jail. Because these police officers, Officer Zato admitted in his deposition that he'd had previous encounters or experience with Mr. Black and that he suspected Mr. Black and that he was wanting to apprehend Mr. Black. Well, Mr. Black, he thought Mr. Black might be the perpetrator. I thought they'd already taken the perpetrator into custody on the front porch. Wasn't there somebody? There was somebody on the front porch that they had apprehended. Maybe they thought Mr. Black was a second perpetrator. But even whether they thought he was a perpetrator or not, the defendants are now that the facts establish, when looked at in the most favorable view to us, that Ronald Black had been shot. So even if he was a perpetrator, and he'd been shot and was detained, he still had the constitutional right to get medical aid for a serious medical need. Is it possible that all this happened so quickly? I mean, we're talking about minutes here. Is it possible that all this happened so quickly and in a scene that was at least partially chaotic, and people were a bit panicky, that deliberate indifference couldn't have arisen under the circumstances? I mean, I'm just wondering here what was the scenario? I think that this was a scenario. It wasn't a split-second scenario or one where everything was in constant chaotic movement. We have deposition testimony from both of the officers that say that they didn't think that this was an emergency situation. They had apprehended the person who had a gun. They had Mr. Black in cuffs, detained, and then they had security. Well, still, even if that's right, I mean, there's evidence that they were on the scene two minutes after the shootings, and that within five minutes of the first call and the second, you know, the second call was made. And, you know, so it's, I mean, it's pretty compressed, and it certainly can't have been. I mean, there were multiple people there. They had one individual who was apparently dead, another person there trying to help who's bleeding from the abdomen. We know that whatever Mr. Black's situation was, even the medics couldn't tell he'd been shot immediately because they had to start cutting his shirt off, and it was only when he began vomiting that they realized he had been shot and where, indeed, the wound was. So, I mean, all that's going on. Isn't that, I mean, isn't Judge Daughtry's description of the scene pretty close to what uncontroverted evidence establishes? I agree that that is the description of the scene. However, layered on top of that, this is happening, I mean, after they've apprehended the guy that was up front on the porch and Mr. Black and looked at the scene. After everything had settled, we're talking minutes between when they had settled the scene and between when the question with deliberate indifference comes to... Well, the first unit must have been summoned almost at the point they entered the house. I mean, they've got an individual, you know, two individuals who are obviously critically wounded. So that, I mean, you pretty much have to time the first call as being almost simultaneous with their entry. The second call is a mere five minutes later and you've got a lot going on and they're trying to help one of the first two victims themselves who's bleeding from the abdomen. I think that in terms of the deliberate indifference inquiry, the critical part is did they have time to think about their actions? Did they have time to think about whether who they were going to, yeah, think about their actions? And we know that the EMS calls were made. That is not what we're disputing. The critical part of the deliberate indifference violation is that they had time to deliberate, but when the first EMS responders came, they didn't tell them about Ronald's gunshot wound. They let them, they told them about the person who'd been shot in the face. They told them about Mr. Gibbons who'd been shot in the gut, but they didn't give, they didn't advise the EMS units that there was a third gunshot wound in the house and thereby they... And your basis for that is it's not mentioned in the EMS report? Coupled with the officer's own statements and their deposition testimony. So that's, that's the sum of my argument. If there are any other questions, you have anything else? No, thank you. Thank you. I hate to keep harping on this, but the five-minute delay was the third call. The second call was made for Mr. Black, but it did not arrive at the scene. Well, apparently the... All right. The unit you were referring to as the diverted unit, I understood your adversary to say was one of two units dispatched in response to the first call, the multiple gunshot wound call. And if there's no evidence in the EMS records of a second call, is your basis for claiming that one was made, your client's testimony? Yes. But that would, there would, might still be a fact issue in the record as to whether a second call was made based on the lack of any EMS indication of that? That's right, Your Honor. The last point I want to mention is that the district court and Appley focuses in on when the officers knew that Mr. Black had been shot. I believe the Fourth Amendment law indicates that the duty of the officer is triggered by the apprehension as opposed to the knowledge. And there's no indication that is immediately upon entering the residence that these officers apprehended Mr. Black. In fact, the evidence is that they engaged the female, they engaged Mr. Black, and then made a decision to apprehend him. And then whatever constitutional duty there was, was triggered at that point as opposed to when he said he was shot, and when someone else said he was shot, and when they knew he was shot. That is not the triggering mechanism for the constitutional violation. But the point remains that there's no indication on the record that there's any law that says you must specify to the first unit that there is a second person injured. I believe that the first call indicating that there was a need for multiple victims discharged the officer's constitutional duty. We appreciate the argument both of you've given, and we'll consider the case carefully, and the court may call the next case.